Filed 7/22/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAFEWAY, INC. et al., | B255216 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC487830) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| ENRIQUE ESPARZA et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. John Shepard Wiley, Judge. Petition denied.

Payne & Fears, James L. Payne, Eric C. Sohlgren, Jeffrey K. Brown and Andrew K. Haeffele for Petitioners.

Arias Ozzello & Gignac, Mike Arias, Makael H. Stahle and Alfredo Torrijos for Real Parties In Interest.

In the underlying action, real parties in interest asserted putative class claims against petitioners Safeway Inc. (Safeway) and The Vons Companies (Vons) for violations of the Labor Code and the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.). The trial court certified a class for purposes of the UCL claim based on the theory that petitioners had a practice of never paying premium wages for missed meal breaks when required (Lab. Code, § 226.7). Petitioners seek a writ directing the trial court to vacate the grant of certification and to enter a new order denying certification. We deny the petition for writ of mandate.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In 2007, the initial class action complaint was filed in the underlying action. In February 2009, real parties Enrique Esparza, Cathy Burns, Sylvia Vezaldenos, and Levon Thaxton II filed their second amended complaint, asserting claims for failure to provide meal and rest breaks (Lab. Code, §§ 226.7, 512), failure to provide itemized pay statements (Lab. Code, § 226), unfair business practices under the UCL, and penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). The complaint alleged that petitioners failed to provide meal and rest breaks, and failed to pay compensation for those missed breaks.

In January 2013, real parties filed a motion for class certification of their claims for failure to provide meal and rest breaks, unfair business practices, and PAGA penalties. They proposed two classes, namely, the "[m]eal [b]reak [c]lass," composed of over 200,000 employees who worked for petitioners between December 28, 2001 and June 17, 2007, and the "[r]eceiver [r]est [b]reak [s]ubclass," composed of all such employees who worked as receivers after

2

December 28, 2001. In connection with the meal break class, real parties sought class certification of the UCL claim, arguing that prior to June 17, 2007, petitioners had a policy of never paying the meal break premium wages set forth in Labor Code section 226.7 "under any circumstances," and that the policy constituted an unlawful or unfair business practice under the UCL.

On February 6, 2014, the trial court granted the motion with respect to the meal break class, and otherwise denied the motion. On March 28, 2014, petitioners filed their petition for writ of mandate. We issued an order to show cause on February 26, 2015.

## DISCUSSION

Petitioners contend the trial court erred in granting class certification with respect to the meal break class. For the reasons discussed below, we disagree.[1]

A. *Standard of Review*

"Code of Civil Procedure section 382 authorizes class action suits in California 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class;

---

[1] In certifying the meal break class, the trial court did not expressly refer to real parties' claims under the Labor Code, the UCL, or PAGA. Before us, petitioners challenge the ruling only insofar as it relates to the UCL claim.

3

and (3) class representatives who can adequately represent the class.  [Citation.]" (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.)

When "[p]resented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate.  To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them. . . .  [H]owever, a court generally should eschew resolution of such issues unless necessary.  [Citation.]  Consequently, a trial court does not abuse its discretion if it certifies (or denies certification of) a class without deciding one or more issues affecting the nature of a given element if resolution of such issues would affect the ultimate certification decision." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1025 (*Brinker*).)

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed.  'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion . . . .  A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]'  [Citations.]  Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence.  [Citation.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1022, quoting *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089.)

Petitioners challenge the class certification on several grounds, including the legal viability of real parties' theory of recovery under the UCL.  However, because certification is not "conditioned upon a showing that class claims for

4

relief are likely to prevail," an inquiry into the merits of a claim is ordinarily appropriate only when that question is "enmeshed with class action requirements, such as whether substantially similar questions are common to the class and predominate over individual questions or whether the claims or defenses of the representative plaintiffs are typical of class claims or defenses." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 443.) Thus, defendants are generally not entitled to a merits determination in the context of a ruling on class certification. (*Ibid.*) Nonetheless, that determination may be proper when the defendants cannot attack the claim by demurrer or summary judgment following certification, or the parties jointly request a merits determination. (*Id.* at p. 443.)

Here, petitioners did not establish those special circumstances before the trial court, which made no merits determination. In this writ proceeding, real parties have responded to petitioners' challenges to their theory of recovery under the UCL, but have not requested a merits determination. We therefore limit our examination of the merits of real parties' theory of recovery to those issues related to class action requirements.

B. *Governing Principles*

We begin by discussing the principles applicable to real parties' theory of recovery under the UCL. Generally, the UCL defines "unfair competition" broadly to include "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) "By proscribing 'any unlawful' business practice, '[the UCL] "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. [¶] However, the law does more than just borrow. The statutory language referring to "any unlawful, unfair *or* fraudulent" practice (italics added) makes clear that a

5

practice may be deemed unfair even if not specifically proscribed by some other law." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*. (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).)  Under the UCL, damages cannot be recovered, and plaintiffs are generally limited to restitution and injunctive relief. (*Clark v. Superior Court* (2010) 50 Cal.4th 605, 610.)

Real parties' theory of recovery under the UCL focuses on the additional compensation afforded employees under the Labor Code for failure to provide meal breaks.[2]  Section 512 obliges employers to provide 30-minute meal periods within a work break at specified intervals absent special circumstances, that is, unless the employee waives or agrees to modify that requirement, or an exception to the requirement is set forth in an applicable wage order issued by the Industrial Welfare Commission (IWC).  (§ 512, subds. (a), (b).)  Under section 512, "an employer's obligation is to provide a first meal period after no more than five hours of work and a second meal period after no more than 10 hours of work." (*Brinker*, *supra*, 53 Cal.4th at p. 1049.)  That obligation reflects the requirements generally stated in the IWC wage orders.  (*Brinker*, *supra*, at pp. 1046-1049.)

As explained in *Brinker*, to comply with the obligation, the employer must afford an "off-duty" meal break, absent an employee waiver or agreement. (*Brinker*, *supra*, 53 Cal.4th at p. 1039.)  The employer properly provides an off-duty break "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so."  (*Id*. at p. 1040.)  Thus, the employer "may not undermine a formal policy of providing

---

[2]     All further statutory citations are to the Labor Code, unless otherwise indicated.

6

meal breaks by pressuring [its] employees to perform their duties in ways that omit breaks." (*Ibid*.)

Nonetheless, an employee is not obliged to police the breaks or ensure that no work is performed during them. (*Brinker*, *supra*, 53 Cal.4th at p. 1040.) Work by an employee during a break does not, by itself, breach the employer's obligation to provide the break. (*Ibid*.) Nor does "[p]roof an employer had knowledge of employees working through meal periods . . . ." (*Ibid*.)

When an employer fails to discharge its duty regarding meal breaks, section 226.7 requires the employer to compensate employees with "premium" pay (*Brinker*, *supra*, 53 Cal.4th at p. 1039.) That statute provides: "(b) An employer shall not require any employee to work during any meal or rest period mandated pursuant to an applicable . . . order of the Industrial Welfare Commission. . . . [¶] (c) If an employer fails to provide an employee a meal . . . period in accordance with a[n] . . . applicable order of the [IWC] order . . . , the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal . . . period is not provided."

In *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102-1111 (*Murphy*), our Supreme Court determined that the additional compensation established in section 226.7 is a "premium wage," not a penalty. There, an employee successfully asserted certain wage-related claims before the Labor Commissioner.[3] (*Murphy, supra,* 40 Cal.4th at pp. 1100-1101.) After the employer sought de novo review of the ruling, the trial court permitted the

---

[3]    Employees may recover unpaid wages and penalties in administrative proceedings before the Labor Commissioner. (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 946 (*Post*); § 98.) The Labor Commissioner's ruling is subject to de novo review in superior court. (*Post, supra*, 23 Cal.4th at pp. 947-948; § 98.2.)

employee to supplement his claims with a claim under section 226.7, and issued an award that included payment for missed meal and rest breaks. (*Murphy, supra,* 40 Cal.4th at p. 1101.) Before the Supreme Court, the employer contended that the "'additional hour of pay'" specified in section 226.7 constituted a penalty, and thus that the employee's claim was subject to the one-year limitations period applicable to penalties (Code. Civ. Proc., § 340, subd. (a)), rather than the three-year limitations period applicable to "a liability created by statute" (Code Civ. Proc., § 338, subd. (a)). (*Murphy*, *supra*, at p. 1102.) In rejecting that contention, the Supreme Court concluded that the additional pay set forth in section 226.7 is a "dual-purpose" remedy intended primarily to compensate employees, and secondarily to shape employer conduct. (*Murphy, supra,* at pp. 1110-1111.) The court stated: "[A]n employee is entitled to the additional hour of pay immediately upon being forced to miss a rest or meal period. In that way, a payment owed pursuant to [Labor Code] section 226.7 is akin to an employee's immediate entitlement to payment of wages or for overtime." (*Id.* at p. 1108.)

In *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1256-1257 (*Kirby*), the Supreme Court held although the remedy set forth in section 226.7 is properly characterized as a wage, an employer's failure to pay that wage "does not form part of a section 226.7 violation . . . ." There, two employees asserted claims against their employers in superior court under the Labor Code and the UCL, including a claim under section 226.7 predicated on a failure to provide rest breaks.[4] (*Kirby, supra,* 53 Cal.4th at pp. 1248-1249.) After the employees entered into a settlement regarding the section 226.7 claim, one of the employers secured a

---

[4]    In addition to presenting claims based on labor law violations before the Labor Commissioner, employees may assert such claims in civil actions. (*Post, supra*, 23 Cal.4th at p. 946.)

fee award under section 218.5, which authorizes an award to the prevailing party "'[i]n any action brought for the nonpayment of wages . . . .'" (*Kirby, supra,* at pp. 1248-1249.)

In reversing the award, the Supreme Court concluded that notwithstanding *Murphy*, a claim under section 226.7 is not an "action brought *for the nonpayment of wages,*" within the meaning of section 218.5 (italics added). (*Kirby*, *supra*, 53 Cal.4th at pp. 1256-1257.) The court determined that the term "'nonpayment of wages,'" in the context of the phrase "'action brought for the nonpayment of wages,'" identifies an alleged legal violation, not a remedy, as it would be absurd to bring an action to obtain the nonpayment of wages. (*Id*. at p. 1256.) The court further determined that the sole legal violation specified in section 226.7 is the failure to provide meal and rest breaks, stating: "Nonpayment of wages is not the gravamen of a section 226.7 violation. Instead, subdivision (a) of section 226.7 defines a legal violation solely by reference to an employer's obligation to provide meal and rest breaks. [Citation.] The 'additional hour of pay' provided for in subdivision (b) is the legal remedy for a violation of subdivision (a), but whether or not it has been paid is *irrelevant* to whether section 226.7 was violated. . . . The failure to provide required meal and rest breaks is what triggers a violation of section 226.7. Accordingly, a section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for non provision of meal or rest breaks." (*Kirby, supra,* at pp. 1256-1257, italics added.) That reading of section 218.5, the court explained, comports with *Murphy*: "To say that a section 226.7 remedy is a wage . . . is not to say that the *legal violation* triggering the remedy is nonpayment of wages." (*Id*. at p. 1257.)

9

C. *Underlying Proceedings*

1. *Motion for Class Certification*

Real parties sought class certification for the meal break class, which encompasses over 200,000 store-level hourly employees who worked for petitioners' Vons and NorCal divisions in California between December 28, 2001 and June 17, 2007. In support of class certification, they contended that petitioners' policy "of not paying meal break premiums under any circumstances" to those employees during the specified break constituted both an "'unlawful'" and an "'unfair'" business practice under the UCL. Real parties argued that the policy was unlawful because it contravened section 226.7 and was otherwise unfair. Real parties maintained that their theory of liability was suitable for class treatment, that the class was ascertainable on the basis of petitioners' employment records, and their own claims were typical of the class members.

To support class certification, real parties submitted excerpts from the depositions of some of petitioners' managers, together with real parties' own declarations and deposition testimony, and a declaration from accounting expert Eric R. Lietzow. According to real parties' showing, prior to June 17, 2007, petitioners used time-keeping systems to monitor when employees began and ended work, as well when they took meal breaks. Terri Buller, a Vons human resources manager, testified that prior to June 2007, there was no mechanism or procedure by which the premium pay related to meal breaks was calculated or determined when due. Michael Scizak, a Safeway director, and Jefferey Mason, the NorCal division's human resources director, testified that prior to June 2007, employees were paid only the meal break pay required by union contracts. Buller, Scizak, and Mason further testified that after June 2007, petitioners implemented a time-keeping system that detected missed, shortened, or late meal breaks, and

10

began to make virtually automatic payments of premium wages for such meal breaks, following managerial review of the system's reports.

Real parties stated that they worked as store-level hourly employees between December 28, 2001 and June 17, 2007, and that on many occasions, they were directed to work through meal breaks, or otherwise were unable to take the breaks due to heavy workloads. According to Lietzow, following a review of real parties' payroll records, he found no payments to real parties prior to June 2007 under the "earning codes" petitioners used to document wage payments pursuant to section 226.7.

Lietzow also stated that he had examined "time punch data" and payroll records for the pertinent break from a random sample of petitioners' stores. Lietzow reviewed the time punch data for what he called "meal break violations" under section 226.7, that is, instances in which the data for an employee on a particular day did not show that the employee had taken a 30-minute break within the first five hours of work, thus reflecting a missed, shortened, or delayed break. Extrapolating from the data for the sample, Lieztow estimated that petitioners' full records would reveal 27,095,927 such violations between December 28, 2001 and June 17, 2007. Lietzow further stated that his review of the payroll records disclosed *no* payments under the earning codes reflecting section 226.7 wages. He thus opined that petitioners made no such payments to employees prior to June 17, 2007.

### 2. *Opposition*

Petitioners opposed class certification on several grounds. They contended no liability could be imposed under real parties' theory, which petitioners characterized as relying on an alleged policy of "not automatically paying meal

11

break premiums." Petitioners argued that any such practice is not itself unlawful, noting that under *Kirby*, the failure to provide premium pay "does not form part of a section 226.7 violation" (*Kirby, supra*, 53 Cal.4th at p. 1256). Petitioners stated: "Where the underlying statutory claim fails, then the UCL claim likewise fails."

Petitioners further contended the theory of liability improperly presupposed that they had contravened the statutory duty to provide meal breaks. Relying on *Brinker*, they argued: "If an employer provides lawful meal periods, it has no obligation to pay meal break premiums. [Citation.] This is true even if an employee chooses not to take his or her meal period." (Underlining deleted.) Petitioners maintained there was "overwhelming evidence that [the] putative class members have been provided lawful meal periods." To support that contention, they submitted more than 2,000 declarations from putative class members and 31 declarations for store managers. Petitioners also submitted a declaration from economist G. Michael Phillips, who stated that he had reviewed the declarations. Phillips opined: "My analysis . . . provides statistically significant evidence that the vast majority of employees always took their meal breaks. I saw no statistically valid evidence supporting the hypothesis of a system-wide policy of denying meal breaks." (Underlining deleted.)

Petitioners further maintained that individualized issues predominated over common issues. They offered a declaration from economist Hyowook Chiang, who had examined the time punch data and payroll records reviewed by Lietzow. Chiang stated: "My analys[i]s . . . shows significant variability [in time punches reflecting apparent short, late, and missed breaks] across jobs, departments, stores, employees, and shift start time. Moreover, it shows that the overwhelming majority of short, late, and missed meal period punches [*sic*] can be traced to a small minority of employees, and that a vast majority of employees have a zero or

12

very low rates of short, late, or missed punches.  Most importantly, it shows absolutely no evidence of a companywide policy or practice of depriving employees of meal periods."  (Underlining deleted.)

### 3.  *Reply*

Real parties contended that petitioners' opposition "completely sidestep[ped]" their theory of liability, namely, "that [petitioners] had a practice before June 17, 2007 of not paying meal break premiums and that this practice constituted an unlawful and unfair business practice . . . ."  Noting that the premium wages are intended to compensate employees and shape employer conduct (*Murphy*, *supra*, 40 Cal.4th at pp. 1110-1111), real parties stated:  "by engaging in a classwide practice of ignoring the statutory mandate of [s]ection 226.7[, subdivision (b)], petitioners unilaterally deprived all class members . . . the compensation guarantee and enhanced enforcement [of the meal break duty]."

According to real parties, petitioners made no attempt to dispute the existence of that practice and instead, repeatedly mischaracterized real parties' theory as predicated on a policy of not automatically paying meal break premium wages.  Real parties stated:  "While automatically paying meal break premiums is precisely what [petitioners] began doing in mid-June of 2007 . . . , [real parties] have never asserted as a violation the failure to *automatically* pay premiums. . . .  [W]hat [real parties] allege is . . . that [petitioners] 'automatically *did not* pay meal break premiums' before mid-June of 2007, regardless of the circumstances."

Real parties maintained that for purposes of a UCL class action, the existence of an unlawful or unfair business practice and the amount of restitution were issues capable of common proof.  They argued that establishing liability required no individualized inquiries into violations of section 512 and 226.7

13

sufficient to bar class certification. They further argued that determining appropriate restitution involved no such assessments. They contended that a result of petitioners' alleged practice, "the class members lost a substantial portion of the value they were otherwise guaranteed as part of their employment. Had they taken comparable jobs at comparable pay with other (presumably law abiding) retailers, the class members would have received the benefits of these statutory protections and would not have suffered this loss." (Italics deleted.) The value of that loss, they further contended, was measurable under a "'market value' approach," relying primary on evidence of petitioners' own conduct.

### 4. *Supplemental Briefing*

The trial court permitted the filing of a surreply and response to the surreply. Petitioners' surreply contended the practice attributed to them by real parties supported no UCL claim. They reaffirmed their view that the practice was not unlawful under section 226.7, and argued the practice was therefore also not unfair. Petitioners further argued that the UCL claim failed because section 226.7 permitted the alleged practice. Real parties' response maintained that for purposes of the UCL, the alleged practice could be determined to be unfair even if it violated no law, and that no statute affirmatively permitted the practice.

### 5. *Ruling*

In granting class certification, the trial court stated: "[Real parties] prove[] that[] before June 17, 2007, Safeway did not pay meal break premiums. . . . Safeway does not contest this fact. Safeway had thousands or tens of thousands of workers, but for years it never paid statutory meal break premiums. Why? One explanation is human perfection: Safeway never, ever erred. This explanation is

14

possible. But human perfection is rare. Another explanation is deep, system-wide error: that Safeway was unaware of, or for some other reason[,] violated[] its duty to pay statutory premiums when required. [¶] This situation presents the central and predominating common issue: did Safeway's system-wide failure to pay appropriate meal break premiums make it liable to the class during this period. This dominant common issue makes certification proper . . . ."

D. *Analysis*

In reviewing the trial court's ruling, our focus is on whether the court abused its discretion in granting class certification, not on the merits of real parties' UCL claim, to the extent resolution of that issue is unnecessary to adjudicate the propriety of a class action (see pt. A., *ante*). As explained below, we see no error in the ruling.

The key questions concern whether common issues predominate, and whether the litigation of individual issues "can be managed fairly and efficiently." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28-29 (*Duran*).) The propriety of a UCL class action "'hinges on "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment."'" (*Id.* at p. 28, quoting *Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327.) Ordinarily, class treatment of a claim is appropriate if the facts necessary to establish liability are capable of common proof, including the so-called "'fact of damage,'" that is, the existence of harm establishing an entitlement to damages. (*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.* (1987) 191 Cal.App.3d 1341, 1350-1354.) If the defendant's liability can be determined "'"by facts common to all members of the class,"'" a class may be certified even though class members must individually establish the amount of

their restitution. (See *Duran*, *supra*, 59 Cal.4th. at p. 28, quoting *Brinker*, *supra*, 53 Cal.4th at pp. 1021-1022.) Nonetheless, "class treatment is not appropriate 'if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the "class judgment" on common issues.'" (*Duran*, *supra*, 59 Cal.4th. at p. 28, quoting *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459.)

### 1. *Liability*

We begin by examining real parties' theory of liability under the UCL, to the extent necessary to assess the propriety of a class claim. Generally, the UCL permits employees to obtain restitution for unpaid wages. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 177 (*Cortez*)). As the trial court observed, the propriety of class treatment required more than the presentation of evidence that during the pertinent period, petitioners never paid meal break premium wages: that conduct subjected petitioners to liability suitable for class treatment only if they had a "system-wide" practice of failing to pay meal break premium wages "when required." The court thus recognized that under real parties' theory of liability, recovery of restitution called for a showing that never paying "appropriate" premium wages is an unlawful or unfair business practice under the UCL, as well as a showing that petitioners *actually* engaged in that type of harmful practice -- or, as the trial court put it, that there was "deep, system-wide error." As discussed below, our inquiry into those required showings establishes that real parties' theory of liability is capable of common proof.

### a. *Failure to Pay Premium Wages "When Required"*

Determining whether real parties' theory is suitable for class treatment necessitates an inquiry into the factual issues relevant to the first showing, namely, the circumstances under which an employer's failure to pay meal break premium wages may constitute an unlawful or unfair business practice under the UCL. We conclude that there is at least one such set of circumstances.

As explained in *Brinker*, an employer discharges its duty to provide an off-duty break "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." (*Brinker, supra*, 53 Cal.4th at p. 1040.) When the employer does so, its knowledge that an employee is working through a meal break establishes no violation of the duty to pay premium wages, though the employer must still compensate the employee for the time worked. (*Ibid*., fn. 19.) In contrast, if the employer knows that meal breaks are missed, shortened, or unduly delayed because the employer has instructed the employee to work, or has otherwise impeded the taking of breaks, that duty is contravened, absent a suitable waiver or agreement by the employee. (See *id*. at pp. 1039-1040, 1049.)

In view of *Murphy*, under those circumstances, the employee is "immediately" entitled to the premium wage, without any demand or claim to the employer, in a manner "akin to an employee's immediate entitlement to payment of wages or for overtime." (*Murphy*, *supra*, 40 Cal.4th at p. 1108.)[5] The Labor

---

[5] Petitioners suggest that employers are not obliged to pay premium wages under those circumstances if employees do not request them or their supervisors merely fail to order payment of the wages. We disagree. As explained in *Murphy*, an employee's right to the premium wages *vests* prior to any action taken to

*(Fn. continued on next page.)*

Code contains numerous provisions requiring the payment of wages (e.g., § 204 [requiring payment of wages every two weeks, unless specified otherwise in employment contract]), including overtime wages (§ 510, subd. (a)), as well as provisions intended to enforce those requirements (e.g., § 210 [imposing penalties for failing to make timely wage payments]; § 1194 [authorizing civil actions to recover unpaid overtime wages].) The Labor Code thus embodies a public policy "in favor of full and prompt payment of wages due an employee." (*Kerr's Catering Service v. Department of Industrial Relations* (1962) 57 Cal.2d 319, 326.) We therefore conclude that a UCL claim may be predicated on a practice of not paying premium wages for missed, shortened, or delayed meal breaks attributable to the employer's instructions or undue pressure, and unaccompanied by a suitable employee waiver or agreement. (See *Cortez, supra,* 23 Cal.4th at p. 177 [under UCL, employer's failure to pay earned wages was an unlawful business practice]; *Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1206 [under UCL, California employer's failure to pay overtime wages to out-of-state employees was an unlawful business practice]; *Tomlinson v. Indymac Bank F.S.B* (2005) 359 F.Supp.2d 891, 895-897 [employer's failure to pay meal break premium wages was an unlawful business practice under the UCL].)

Petitioners contend no UCL claim can be predicated on a practice of not paying premiums, absent evidence that the employer failed to "provide" lawful meal breaks. They argue that under *Kirby*, there is no theory under which a failure to pay meal break premium wages is "separately actionable" from a failure to

---

enforce that right. (*Murphy, supra,* 40 Cal.4th at p. 1108.) For that reason, employers owe the premium wages in the absence of any request by employees or payment authorization by their supervisors.

18

provide meal breaks. In addition, they argue that under *Brinker*, an employer that provides meal breaks is not obliged to ensure that employees do not work through them.

Although we do not disagree with petitioners' primary contention, it does not address real parties' theory of liability, as elaborated above. Nothing in *Kirby* or *Brinker* forecloses that theory, which is predicated not on a failure to pay premium wages in the absence of section 226.7 violations, but on an alleged practice of failing to pay them *when required*. As explained above, under that theory, when an employer directs or improperly pressures employees to miss, shorten, or delay meal breaks in the absence of a suitable waiver or agreement, employees accrue premium wages that the employer is obliged to pay, without any demand or action by the employee.[6]

Petitioners maintain that real parties have identified no unlawful or unfair practice. They invoke two restrictions on liability under the UCL traceable to *Cel-Tech*, *supra*, 20 Cal.4th 163, which involved UCL claims relating to the marketing of consumer goods and services. There, our Supreme Court stated that no UCL claim may be predicated on a practice for which there is a "'safe harbor,'" that is, specific legislation that "clearly permit[s]" the practice. (*Cel-Tech*, *supra*, at pp. 182-183.) In addition, the court concluded that for purposes of the type of UCL claim presented to it, the public policy necessary to establish an unfair practice must be closely tied to a statute. (*Cel-Tech*, *supra*, at p. 187.) The court stated: "When a plaintiff who claims to have suffered injury from a direct

---

[6]     In a related contention, petitioners' reply brief suggests that real parties' theory is predicated on petitioners' lack of a "formal policy" regarding the payment of meal break payment wages. However, the theory relies on the practice described above, not the absence of any such formal policy.

competitor's 'unfair' act or practice invokes [the UCL], the word 'unfair'. . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Ibid*.) Following *Cel-Tech*, at least one appellate court has concluded that in any UCL action, the public policy underlying an alleged unfair practice "must be 'tethered' to specific constitutional, statutory, or regulatory provisions." (*Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 854.)

Relying on *Kirby*, petitioners contend that the practice attributed to them regarding the nonpayment of meal break premium wages was lawful and permissible. However, under the "safe harbor" exception to UCL liability, "[t]here is a difference between (1) not making an activity unlawful, and (2) making that activity lawful." (*Cel-Tech*, *supra*, 20 Cal.4th p. 183.) *Kirby* stands solely for the proposition that an employer's failure to pay accrued meal break premium wages is not itself a violation of section 226.7. Nothing in *Kirby* suggests that section 226.7 or any other provision of the Labor Code "clearly permit[s]" an employer to withhold accrued meal break premium wages (*Cel-Tech*, *supra*, 20 Cal.4th at pp. 182-183).

Petitioners also contend that because real parties have asserted no class claim for violations of section 226.7 based on a policy or practice of denying meal breaks, they cannot maintain a class claim under the UCL based on an alleged practice of never paying meal break premium wages. The crux of their argument is that under the test for unfairness in *Cel-Tech*, no UCL claim for an unfair practice is tenable absent an underlying claim for a Labor Code violation. We disagree. Nothing in *Cel-Tech* suggests that unfairness requires a statutory violation; on the contrary, *Cel-Tech* expressly states that the UCL is independent

20

of other statutes, and prohibits unfair practices not otherwise unlawful. (*Cel-Tech*, *supra*, 20 Cal.4th at pp. 180-181.) Furthermore, assuming --without deciding -- that the test for unfairness set forth in *Cel-Tech* is applicable to petitioners' claim, the alleged practice is unfair, in view of the Labor Code provisions discussed above regarding timely payment of wages, as well as the public policy they embody.

*Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, upon which petitioners rely, is distinguishable. There, a franchisor of convenience stores imposed a contractual obligation on franchisees to obtain payroll services from the franchisor. (*Id*. at pp. 1180-1181.) A franchisee's employee asserted a UCL class action against the franchisor, alleging that its payroll system did not fully compensate franchisee employees for their work. (*Aleksick v. 7-Eleven, Inc., supra,* 205 Cal.App.4th at pp. 1180-1181.) When the franchisor secured summary judgment on the claim, the appellate court affirmed, concluding that because the franchisor was not the class members' employer, the UCL claim failed for want of a cognizable unlawful or unfair practice under the Labor Code. (*Aleksick v. 7-Eleven, Inc., supra,* at pp. 1185-1193.) Here, in contrast, petitioners employed real parties and the putative class members during the pertinent period.

Petitioners further contend the trial court erred in certifying real parties' UCL theory for class treatment in the absence of a suitable showing of "[p]redicate [l]iability." They argue that the theory presupposes liability without proof, and that the trial court's ruling denied them due process. However, the court recognized that real parties' theory required a demonstration of facts sufficient to establish liability. As noted above, an element of the common issue identified by the court was whether "there was deep, system-wide error." The court thus

21

effectively determined that the facts required to show liability were suitable for class treatment. We therefore turn to that aspect of the court's ruling.

### b. *"Deep, System-Wide Error"*

To demonstrate the propriety of class certification, real parties were obliged to show that the practice described above and the so-called "fact of damage" -- that is, the existence of harm supporting a recovery of restitution -- were capable of common proof. Generally, the fact of damage is suitable for class treatment only when the class members """"have sustained the same or similar damage."""" (*Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1349-1350, italics deleted, quoting *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 664.) Aside from submitting evidence relating to the existence of the practice, real parties proposed a theory of recovery identifying the restitution sought and their entitlement to it. They maintained they did *not* seek accrued meal break premium wages owed to individual class members, but rather the loss of the "compensation guarantee and enhanced enforcement" implemented by section 226.7. According to real parties, that loss was imposed on "*all* class members," as "the class members lost a substantial portion of the value they were otherwise guaranteed as part of their employment . . . ." (Italics added.)

Real parties' evidentiary showing relied on their own declarations and deposition testimony, as well as deposition testimony from petitioners' managers. That evidence showed that prior to 2007, real parties often had been directed or pressured by supervisors not to take meal breaks, and that petitioners had no mechanism by which the premium pay related to meal breaks was calculated or determined when due. In addition, real parties submitted the declaration from accounting expert Leitzow, who offered opinions based on a sample of petitioners'

22

time punch data and payroll records. He estimated that petitioners' full records for the pertinent break would disclose 27,095,927 "meal break violations," that is, instances in which employee time punch data reflected omitted, shortened, or delayed meal breaks. He also stated that the records he reviewed -- including real parties' own payroll records -- showed no premium wage payments under the earning codes used to document section 226.7 payments.[7]

In our view, real parties demonstrated that the existence of the practice and the fact of damage were matters suitable for class treatment. Real parties' evidence supports the reasonable inference that in the context of a class action, they could establish that petitioners engaged in the alleged practice, that is, they never paid meal break premium wages, even though a significant number of employees accrued them. Furthermore, in view of real parties' theory of restitution, those facts would also suffice to demonstrate the fact of damage. Under that theory, the fact of damage does *not* require a showing that all -- or virtually all -- class members accrued unpaid meal break premium wages, but only that on a system-wide basis, petitioners denied the class members the benefits of the compensation guarantee and enhanced enforcement implemented by section 226.7.

We find further support for our conclusion from the concurring opinion of Justice Werdegar in *Brinker*, who also authored the majority opinion. In the concurring opinion, for the guidance of the parties on remand, Justice Werdegar stated the majority opinion did not accept the employer's contention that the

---

[7]    Although the principles regulating the use of statistical methods to establish liability in class actions are unsettled, the use of such a method may be proper when the defendant is not prevented from impeaching it or presenting defenses. (*Duran*, *supra*, 59 Cal.4th 35, 38-40.)

determinations necessary to show why meal breaks were missed categorically precluded certification of a class action for missed meal breaks. (*Brinker*, *supra*, 53 Cal.4th at p. 1052 (conc. opn. of Werdegar, J.).) In explaining that a variety of methods existed to render such actions manageable, Justice Werdegar placed special emphasis on a presumption based on record-keeping obligations. (*Id*. at pp. 1052-1054 (conc. opn. of Werdegar, J.).) Justice Werdegar stated that when the applicable IWC wage order obliges the employer to record meal breaks, "[i]f [those] records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided. . . . An employer's assertion that it did relieve the employee of duty, but the employee waived the opportunity to have a work-free break, is not an element that a plaintiff must disprove as part of the plaintiff's case-in-chief. Rather, . . . the assertion is an affirmative defense, and thus the burden is on the employer, as the party asserting waiver, to plead and prove it. [Citations.]" (*Brinker*, *supra*, at p. 1053 (conc. opn. of Werdegar, J.).) In view of the presumption and other methods of rendering a class action manageable, including representative testimony, surveys, and statistical analysis, there is no per se bar to class actions related to missed meal breaks, although denial of certification may be necessary in some instances.[8] (*Id*. at pp. 1053-1055 (conc. opn. of Werdegar, J.).)

---

[8] The presumption discussed by Justice Werdegar is predicated on the United States Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680. (*Brinker*, *supra*, 53 Cal.4th at p. 1053, fn. 1 (conc. opn. of Werdegar, J.).) There, employees asserted claims for unpaid overtime under the Federal Labor Standards Act (FLSA) (29 U.S.C. § 201 et seq.), alleging that because their employer's time-keeping system automatically reduced their clocked breaks of work in a predetermined manner, they were not fully compensated for work performed. (*Anderson v. Mt. Clemens Pottery Co., supra*, 328 U.S. at pp. 682-684.) Noting that the FLSA obliged employers to keep proper work records, the high court determined that once the employees had adequately
*(Fn. continued on next page.)*

Here, establishing that a significant number of employees accrued unpaid meal break premium wages is capable of common proof, in view of petitioners' time punch data and the presumption identified by Justice Werdegar. There is no dispute that the applicable wage order is Wage Order 7-2001 (Cal. Code Regs., tit. 8, § 11070), which obliges employers to provide at least one 30-minute meal break for shifts of over five hours (absent a waiver available only in limited circumstances) (*id.*, subd. (11)(A)), requires employers to record meal breaks (*id.*, subd. (7)(A)(3)), and permits an "on duty" meal break only with the employee's express written agreement (*id.*, subd. (11)(C)). The time punch data and records identified by Leitzow are capable of raising a rebuttable presumption that a significant portion of the missed, shortened, and delayed meal breaks reflected meal break violations under section 226.7. Because that fact potentially can be shown without consideration of an unwieldy number of individualized issues, the record shows that the facts necessary to establish liability are capable of common proof.

Petitioners' contentions are largely directed at a theory real parties do not assert. They maintain that real parties' UCL claim is not suitable for class treatment for several reasons, each of which relies on the assumption that real parties seek unpaid meal break premium wages. Their primary contention is that the issues regarding liability and the entitlement to restitution are incapable of

---

shown they performed work for which they were owed compensation and sufficient evidence of the amount of that work, the burden shifted to the employer "to come forward with evidence of the precise amount of work performed." (*Anderson v. Mt. Clemens Pottery Co. supra*, at pp. 687-688.) A contrary holding, the court explained, would "penalize" employees and "place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA]." (*Id.* at p. 687.)

25

common proof unless they had a policy or practice of denying meal breaks. In the absence of such a policy or practice, petitioners argue, class treatment of real parties' claim necessitates individualized assessments of the time punch data to establish section 226.7 violations and the accrual of premium wages. Petitioners further maintain they had policies guaranteeing meal breaks, and there is no evidence they systematically required employees to miss, shorten, or delay meal breaks. They point to the evidence that prior to June 2007, they provided meal breaks to the putative class members in compliance with sections 226.7 and 512, Wage Order 7-2001, and the applicable collective bargaining arguments.[9]

As explained above, however, real parties' theory of liability does not require individual issues sufficient to preclude class treatment. That theory predicates liability on petitioners' alleged practice of never paying meal break premium wages when required, and seeks restitution for the class-wide loss of the statutory benefits implemented by section 226.7, not the premium wages accrued by class members. Accordingly, establishing real parties' theory does not

---

[9]     We note that petitioners represent that Safeway paid meal break premiums before 2007 "as required under its collective bargaining agreements." However, during the hearing on the certification motion before the trial court, petitioners' counsel acknowledged that they had submitted no evidence that even a single meal break premium wage was ever paid. To the extent petitioners suggest that the contractual penalties amounted to payment of the premium wages owed under section 226.7, they have forfeited that contention, as they did not raise it before the trial court, and offer no argument with citation to legal authority to support it. (*Evans v. Lasco Bathware, Inc.* (2009) 178 Cal.App.4th 1417, 1429, fn. 6 (*Evans*); *Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 844, fn. 3; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-771.)

necessitate excessive individualized assessments of time punch data or similar inquiries.[10]

Petitioners also contend the class definition is defective because it is "completely disconnected" from real parties' theory of liability, and contains individuals owed no meal break premium wages, as well as individuals regarding whom the existence of a meal break violation is difficult to assess. Those contentions fail, however, as real parties' theory of restitution places the purported loss on *all* members of the class, as defined.

Petitioners challenge real parties' theory of restitution, arguing that they seek restitution for a loss not cognizable under the UCL. However, as petitioners raised no objection to the theory before the trial court, and first raised their challenges in their reply brief in this writ proceeding, they have forfeited their contentions of error. (*Evans, supra,* 178 Cal.App.4th at p. 1429, fn. 6.) In so concluding, we note that the forfeiture does not bar petitioners from attacking the theory by means of a motion for summary judgment or other suitable manner. (*Hall v. Rite Aid Corp.* (2014) 226 Cal.App.4th 278, 296-297.)

---

[10] The decisions upon which petitioners rely are factually distinguishable. In each case, the party seeking class certification of claims related to section 226.7 did not rely on real parties' theory of restitution, and the pertinent court determined the propriety of class treatment on the basis of a different theory of recovery. (*Sotelo v. Medianews Group, Inc.* (2012) 207 Cal.App.4th 639, 652-655; *Ugas v. H & R Block Enterprises, LLC* (C.D. Cal. 2012) 2012 U.S. Dist. LEXIS 156359, *1-*13; *Uddin v. Radio Shack, Corp.* (C.D. Cal. July 2, 2012, CV 11-398 CAS (JCGx)), pp. 13-15; *Gonzalez v. Millard Mall Services, Inc.* (S.D. Cal. 2012) 281 F.R.D. 455, 461-464 [2012 U.S. Dist. LEXIS 28142, **14-**24]; *Ordonez v. Radio Shack, Inc.* (C.D. Cal. 2013, Jan. 17, 2013, No. CV 10-7060-CAS (JCGx)) 2013 U.S. Dist. LEXIS 7868, *17-*24.)

## 2. *Determining the Amount of Restitution*

We further conclude that determining the amount of restitution under real parties' theory of restitution presents no issues precluding class certification. Regarding restitution, the UCL provides that "[t]he court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (Bus. & Prof. Code, § 17203.) As noted above (see pt. D.1., *ante*), the UCL permits employees to obtain restitution for unpaid wages. (*Cortez, supra*, 23 Cal.4th at p. 177.) In suitable circumstances, "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received" is an appropriate measure of restitution. (*Id.* at p. 174.) Generally, "[i]n order to recover under th[at] measure, there must be evidence of the actual value of what the plaintiff received. When the plaintiff seeks to value the product received by means of the market price of another, comparable product, that measure cannot be awarded without evidence that the proposed comparator is actually a product of comparable value to what was received. [Citation.]" (*In re Vioxx Class Cases* (2009) 180 Cal.App.4th 116, 131.)

As noted, real parties do not seek the unpaid accrued meal break premium wages, but instead maintain that valuing the loss of the "statutory protections" to the class can be determined by a "'market value' approach." Before the trial court and in this proceeding, they have proposed a specific application of the measure of restitution discussed above, arguing that the loss is "directly measurable" by reference to petitioners' own conduct, namely, their 2007 decision to begin paying meal break premium wages "automatically" for short, late, and missed meal breaks reflected in time punch data. They assert that petitioners effectively identified "the least costly method to correct [their] pre-June 2007 practice."

28

We do not examine the merits of real parties' proposed measure of restitution, as no such inquiry is necessary for a determination whether it precludes class treatment of real parties' UCL claim. For purposes of our review, it is sufficient that the proposed measure does not require the litigation of issues unsuitable for class certification. Furthermore, because petitioners raised no challenge to the real parties' proposed measure of restitution prior to their reply brief in this proceeding, they have forfeited any contention of error regarding it. In sum, the trial court did not err in certifying real parties' UCL claim for class treatment.

## DISPOSITION

The petition for writ of mandate is denied.  Real parties are awarded their costs.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.


30