Filed 6/26/17  Modified and Certified for Pub. 7/26/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VALERIE KIZER et al., | |
| Plaintiffs and Appellants, | G052558 |
| v. | (Super. Ct. No. 30-2014-00707394) |
| TRISTAR RISK MANAGEMENT, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Affirmed.

Blumenthal, Nordrehaug & Bhowmik, Norman B. Blumenthal and Kyle R. Nordrehaug for Plaintiffs and Appellants.

Seyfarth Shaw, Jon D. Meer, Sheryl L. Skibbe and Leo Q. Li for Defendant and Respondent.

\*          \*          \*

Plaintiffs and appellants Valerie Kizer and Sharal Williams (collectively, Plaintiffs) filed this putative class action against their former employer, defendant and respondent Tristar Risk Management (Tristar), alleging Tristar failed to pay Plaintiffs and its other claims examiners overtime compensation because it misclassified them as exempt from California's overtime laws.

After twice continuing the hearing for supplemental briefing and evidence, the trial court denied Plaintiffs' class certification motion because they failed to present substantial evidence showing their claims were typical of the proposed class and common issues of law or fact predominated. The court found Tristar's alleged misclassification of the proposed class members suitable for class treatment, but it denied the motion because misclassification does not give rise to liability on an overtime claim unless the employees first show they worked hours or days that required overtime compensation. The court explained Plaintiffs failed to present evidence showing Tristar had a generally applicable policy or practice that required employees to work overtime, and therefore Plaintiffs failed to show they could establish Tristar's liability based on proof common to all class members. Consequently, the court concluded class treatment of Plaintiffs' claims was not appropriate.

Plaintiffs contend the trial court erred because the amount of overtime worked by the individual class members is a damages issue, and the need for individual proof of damages is not a proper basis for denying class certification. Plaintiffs, however, misconstrue the governing legal standards and the basis for the court's ruling.

The trial court did not deny the motion based on Plaintiffs' failure to show the amount of overtime worked by each putative class member. Rather, the court denied the motion because Plaintiffs failed to show that whether the putative class members worked any overtime at all was subject to common proof. To satisfy the commonality requirement for class certification, Plaintiffs were required to show their liability theory could be established on a classwide basis through common proof. Typically, in overtime

2

claims, plaintiffs show this by presenting evidence of an employer policy or practice that generally required the class members to work overtime. Plaintiffs presented no evidence of any such policy or practice.

Plaintiffs also contend the trial court erred in refusing class certification on their claim under California's unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.). According to Plaintiffs, the UCL authorizes restitution and other relief without a showing that each class member individually suffered injury, and therefore Plaintiffs' were not required to present evidence of the amount of overtime each putative class member worked. Plaintiffs again misconstrue the governing law. The cases Plaintiffs cite address standing to bring a UCL claim; they do not address the showing required to obtain class certification. As explained below, the governing case law makes clear that, aside from standing, a plaintiff seeking class certification on a UCL claim still must establish common issues of law or fact predominate, the representative's claim is typical of the class, and all other elements required for class certification. Because substantial evidence supports the court's decision Plaintiffs failed to make that showing, we affirm the court's decision to deny class certification.

I

FACTS AND PROCEDURAL HISTORY

Tristar provides third party risk management services, including claims adjusting and administrative services, with specialization in handling worker's compensation and general liability claims. Tristar's California clients include privately held, self-insured companies, publicly traded companies, and public entities, such as cities and counties. Tristar maintains branch offices in nine cities throughout California. Each branch typically is staffed with a branch manager, claims supervisors, administrative staff, and claims examiners I, II, and III.

Under Tristar's standardized "Position Description," the job duties and responsibilities for its claims examiners include managing a caseload of 150 to 180 worker's compensation files, investigating and fixing claims, managing medical treatment and billing, setting reserves, settling and finalizing claims, documenting all actions, and communicating with clients and claimants. Claims examiners typically work on claims for one client at a time, and the guidelines, protocols, rules, and expectations for managing the claims vary from client to client. Claims supervisors review files and supervise the work of claims examiners under standardized policies and procedures to ensure the claims examiners follow the necessary procedures and meet deadlines. Tristar's normal work schedule for claims examiners required them to work 7.5 hours per day, but Tristar also offered several alternative work schedules that allowed claims examiners to work 8.33 or 8.5 hours per day in exchange for receiving every other Monday or Friday off. Most claims examiners elected to work under one of Tristar's alternative work schedules.

Kizer worked for Tristar as a claims examiner III from February 2011 to January 2014, and Williams worked for Tristar as a claims examiner II from April 2006 to January 2014. In February 2014, Plaintiffs filed this putative class action against Tristar alleging it misclassified them and other similarly situated claims examiners as exempt from California's overtime laws. According to Plaintiffs, Tristar required its claims examiners to work more than eight hours a day and 40 hours per workweek, but paid no overtime based on the exempt classification it applied to its claims examiners. The complaint alleges claims for (1) UCL violations, (2) failure to pay overtime compensation (Lab. Code, §§ 510, 1194, 1198), (3) failure to provide itemized wage statements (Lab. Code, § 226), and (4) failure to provide wages when due (Lab. Code, §§ 201, 202, 203). Tristar filed an answer denying liability and asserting an affirmative defense based on the overtime exemption for administrative employees established by

4

Industrial Welfare Commission wage order No. 4-2001.  (See Cal. Code Regs., tit. 8, art. 4, § 11040, subd. 1(A)(2).)

In November 2014, Plaintiffs filed a motion to certify a class composed of "'all individuals who are or previously were employed by [Tristar] as Claims Examiner[s] II and Claims Examiner[s] III in [Tristar's] Workers' Compensation Division between February 25, 2010 and December 31, 2014.'"[1]  Plaintiffs argued class certification was appropriate to determine their claim that Tristar had a uniform policy of misclassifying its claims examiners as exempt under wage order No. 4-2001.  According to Plaintiffs, they planned to "bifurcate liability from damages such that a trial on the propriety of the exemption can first proceed before damages are assessed."  In support, Plaintiffs offered evidence describing the job duties of Tristar claims examiners and the supervision Tristar imposed on them to show they could establish by proof common to the entire class that the administrative employee exemption did not apply.  Tristar opposed the motion, arguing individual issues regarding how each claims examiner performed his or her job predominated on several of the elements necessary to establish the administrative employee exemption.

In April 2015, the trial court conducted a hearing on Plaintiffs' motion. The court heard argument and continued the hearing for the parties to submit supplemental briefing and evidence on whether each element of the administrative employee exemption could be tried based on evidence common to the entire class, and if so, how.  After receiving supplemental briefing, the court conducted another hearing on Plaintiffs' motion in June 2015.

---

[1]  In later briefing, Plaintiffs modified the class definition to include "all individuals who are or previously were employed by [Tristar] as Claims Examiner II and Claims Examiner III in [Tristar's] Workers' Compensation Division between February 25, 2010 and December 31, 2014 who did not work as Return to Work Coordinators, Backup Supervisors, or Hearing Representatives."  The modifications to the class definition have no bearing on the trial court's ruling or this appeal.

The court issued a tentative ruling to deny the motion, explaining Plaintiffs had shown that some elements of the administrative employee exemption may be subject to common proof, but they failed to show that all of the elements could be established on a classwide basis. The court further explained that even if the misclassification claim could be tried on a classwide basis, Plaintiffs had failed to show a class action was appropriate because "proof of misclassification is only part of the equation. Misclassification itself does not result in automatic liability. Missing from [P]laintiffs' motion is any evidence that [Tristar] had a uniform policy of requiring putative class members to work overtime and that putative class members in fact worked overtime." According to the trial court, "to establish liability at trial, Plaintiffs will bear the burden of proving that they (and the members of any certified class) in fact worked sufficient hours per day and/or week to be entitled to overtime compensation, which they did not receive. The burden would then shift to [Tristar] to prove any affirmative defense (such as exemption or the use of a properly-enacted alternative workweek schedule). . . . [¶] . . . [¶] Even Plaintiffs' declarations omit any discussion of whether they worked overtime. In the absence of such proof, certification of a class to pursue Plaintiffs' overtime claim is appropriately denied." The court continued the hearing to provide Plaintiffs an additional opportunity to correct these deficiencies.

In July 2015, the trial court conducted the third hearing on Plaintiffs' motion after receiving more supplemental briefing and evidence. Plaintiffs conceded all elements of the administrative employee exemption except the general supervision element because the exemption does not apply if one element is lacking. Plaintiffs represented they could defeat the general supervision element by presenting classwide evidence regarding Tristar's generally applicable policies and procedures governing claims examiners and their work.

The trial court accepted those concessions and found the general supervision element could be tried on a classwide basis. Nonetheless, the court denied

6

Plaintiffs' motion because it found they failed to present substantial evidence establishing their claims were typical of the class or that common issues of law or fact predominated on Plaintiffs' overtime claims.

The court explained Plaintiffs failed to present any evidence of a generally applicable written or de facto policy that required claims examiners to work overtime. According to the court, Plaintiffs presented evidence of the written job requirements and Tristar's expectations for claims examiners, but the court could not infer those requirements and expectations required claims examiners to work overtime without evidence from an industry expert or other claims examiners explaining they could not complete the workload Tristar assigned without working overtime. Although Plaintiffs' most recent declarations explained they had to work overtime to complete their assigned files, the court explained those declarations were "anecdotal" and did not support class certification because they failed to establish Plaintiffs' experiences were typical or common to all claims examiners.

The court also found "there is no substantial evidence that any other potential class members suffered the same injury." "Without credible evidence that more than two of the more than 450 Claims Examiner[s] II and III worked overtime," the court explained it "[could] not conclude that a common fact issue exists, much less predominates." Finally, the court explained these deficiencies in Plaintiffs' evidence rendered class certification inappropriate on all of Plaintiffs' claims because they acknowledged their claims derived from the overtime claim.

## II

### DISCUSSION

A.    *Governing Legal Principles*

    1.    Overtime Pay Rules and Exemptions

"California's Labor Code generally requires overtime pay for employees working more than [eight hours in one workday or] 40 hours in a given workweek." (*Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 978 (*Dailey*); see Lab. Code, § 510, subd. (a).)  The Legislature, however, authorized the Industrial Welfare Commission to establish exemptions from the overtime pay requirements for "'executive, administrative, and professional employees'" when certain conditions are met.  (*Dailey*, at pp. 978-979; see Lab. Code, § 515, subd. (a).)

The exemption at issue here is the exemption for administrative employees. Industrial Welfare Commission wage order No. 4-2001 governs this exemption and establishes a five-part test to determine whether it applies.  (*Dailey*, *supra*, 214 Cal.App.4th at p. 979; *Eicher v. Advanced Business Integrators, Inc.* (2007) 151 Cal.App.4th 1363, 1371; see Cal. Code Regs., tit. 8, art. 4, § 11040, subd. 1(A)(2).) For the exemption to apply, "[t]he employee must (1) perform 'office or non-manual work directly related to management policies or general business operations' of the employer or its customers, (2) 'customarily and regularly exercise[] discretion and independent judgment,' (3) 'perform[] under only general supervision work along specialized or technical lines requiring special training' or 'execute [] under only general supervision special assignments and tasks,' (4) be engaged in the activities meeting the test for the exemption at least 50 percent of the time, and (5) earn twice the state's minimum wage."  (*Eicher*, at p. 1371; see Cal. Code Regs., tit. 8, art. 4, § 11040, subd. 1.(A)(2).)  "[E]ach of the five elements must be satisfied to find the employee exempt as an administrative employee."  (*Eicher*, at p. 1372.)

8

This and other "exemptions from statutory mandatory overtime provisions are narrowly construed, and the employer bears the burden of proving the employee's exemption as an affirmative defense." (*Walsh v. IKON Offices Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1453, fn. 8; see *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794-795.) The employee, however, bears the initial burden to show he or she worked overtime hours without receiving overtime pay before the employer must establish the applicability of any exemption. (*Sotelo v. Medianews Group, Inc.* (2012) 207 Cal.App.4th 639, 654 (*Sotelo*); see *Bell v Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 747-748 (*Bell*).)

2.     Class Action Requirements

"Originally creatures of equity, class actions have been statutorily embraced by the Legislature whenever 'the question [in a case] is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .'" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*); see Code Civ. Proc., § 382.)

"The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."'" (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) The party seeking class certification bears the "burden to support each of the above factors with a factual showing." (*Sotelo*, *supra*, 207 Cal.App.4th at p. 647; see *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*); *Dailey*, *supra*,

9

214 Cal.App.4th at p. 989 [party seeking class certification "required to present substantial evidence" establishing propriety of class treatment].)

"'The certification question is "essentially a procedural one"' [citation] that examines 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.'" (*Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 372 (*Martinez*); see *Sav-On*, *supra*, 34 Cal.4th at pp. 326-327.) "'"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [class certification] are met."'" (*Brinker*, *supra*, 53 Cal.4th at p. 1023.) "[R]esolution of disputes over the merits of a case generally must be postponed until after class certification has been decided [citation], with the court assuming for purposes of the certification motion that any claims have merit." (*Brinker*, at p. 1023; *Martinez*, at p. 372 ["The court must assume the class claims have merit and resolve disputes regarding the claims' merits only when necessary to determine whether an element for class certification is satisfied"].)

Here, the trial court denied class certification because it found Plaintiffs failed to establish their claims were typical of the proposed class and that common questions of law or fact predominated over individual questions. "The typicality requirement's purpose '"is to assure that the interest of the named representative aligns with the interests of the class. [Citation.] '"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."' [Citations.] The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"'" (*Martinez*, *supra*, 231 Cal.App.4th at p. 375.)

"On the issue of whether common issues predominate in the litigation, a court must 'examine the plaintiff's theory of recovery' and 'assess the nature of the legal

10

and factual disputes likely to be presented.'" (*Dailey*, *supra*, 214 Cal.App.4th at p. 988.) "The 'ultimate question' . . . is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' . . . 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.'" (*Brinker*, *supra*, 53 Cal.4th at pp. 1021-1022.) The trial court "must determine whether the elements necessary to establish liability are susceptible of common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence." (*Id*. at p. 1024.) "Predominance is a factual question [for the trial court]." (*Id*. at p. 1022.)

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.'" (*Brinker*, *supra*, 53 Cal.4th at p. 1022.)

"In determining whether the record contains substantial evidence supporting the ruling, a reviewing court does not reweigh the evidence and must draw all reasonable inferences supporting the court's order." (*Dailey*, *supra*, 214 Cal.App.4th at p. 988; see *Sav-On*, *supra*, 34 Cal.4th at p. 328.) "The reviewing court 'must examine the trial court's reasons for denying class certification.' [Citation.] When reviewing an order denying class certification, appellate courts 'consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial.'" (*Jaimez v.*

11

*Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1297-1298.) "'"'Any valid pertinent reason stated will be sufficient to uphold the order."'"' (*Sav-On*, at p. 327.)

B.      *The Trial Court Did Not Abuse Its Discretion in Denying Class Certification Based on Plaintiffs' Failure to Show Common Issues Predominated*

   1.      The Overtime Claims[2]

        Plaintiffs contend the trial court erred by applying an improper legal standard because it found Plaintiffs failed to show common questions of law or fact predominated based on Plaintiffs' "purported failure to show the amount of overtime worked by the class." According to Plaintiffs, whether each class member worked overtime and the amount they worked is a damages issue that the governing legal standards prohibited the court from considering at the class certification stage. Plaintiffs misconstrue both the governing legal standards and the court's order.

        As explained above, the ultimate issue on the predominance factor is whether the plaintiff's theory of liability is likely to prove amenable to class treatment. (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) "Ordinarily, class treatment of a claim is appropriate if the facts necessary to establish liability are capable of common proof, including the so-called '"fact of damage,"' that is, the existence of harm establishing an entitlement to damages. [Citation.] If the defendant's liability can be determined "'by facts common to all members of the class,'" a class may be certified even though class members must individually establish the amount of their [damages]." (*Safeway, Inc. v. Superior Court* (2015) 238 Cal.App.4th 1138, 1154 (*Safeway*).) But "'"[t]here can be no class certification unless it is determined by the trial court that similarly situated persons

-------------------

        [2]      Aside from the UCL claim, we consider all of Plaintiffs' claims collectively because Plaintiffs conceded in the trial court all their claims were derivative of their overtime claim, and, with the exception of the UCL claim, they do not treat any of the claims separately on appeal.

12

have sustained damage.  There can be no cognizable class unless it is first determined that members who make up the class have sustained the same or similar damage."'" (*Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1350.)

In the wage and hour context, courts routinely have found suitable for class treatment a claim alleging an employer consistently applied a uniform policy that harmed an identifiable class of employees when the policy *and the harm it caused* are subject to common proof for all class members.  (*Brinker*, *supra*, 53 Cal.4th at p. 1033.)  To obtain certification of such a class, the class proponent must "present substantial evidence that proving *both* the existence of [the employer's] uniform policies and practices *and* the alleged illegal effects of [the employer's] conduct could be accomplished efficiently and manageably within a class setting." (*Dailey*, *supra*, 214 Cal.App.4th at p. 989; see *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 29.)  Establishing a uniform policy that an employer consistently applied to misclassify a group of employees as exempt from overtime requirements is not sufficient to support class certification because misclassification alone does not establish liability for overtime violations.  (*Sotelo*, *supra*, 207 Cal.App.4th at p. 655.)

In *Sotelo*, a group of newspaper delivery people sued a conglomerate of newspapers, alleging they intentionally misclassified the plaintiffs as independent contractors to avoid paying overtime compensation.  (*Sotelo*, *supra*, 207 Cal.App.4th at pp. 644-645.)  The trial court denied the plaintiffs' motion for class certification because they failed to demonstrate that overtime work by the potential class members could be shown by common evidence regardless of whether the newspapers misclassified the class members:  "'Plaintiffs must prove that putative class members in fact worked sufficient days and/or hours to be entitled to overtime . . . .  These inquiries involve the examination of different facts from the classification question; the motion, however, fails to discuss whether there is common evidence on this issue.'" (*Id*. at pp. 652-653.)  The plaintiffs

13

appealed, arguing, as Plaintiffs do here, that whether they worked overtime "go[es] to damages" and does not prevent class certification. (*Id.* at p. 653.)

The Court of Appeal rejected that argument and affirmed the trial court's order because "simply having the status of an employee does not make the employer liable for a claim for overtime compensation . . . . An individual employee establishes liability by proving actual overtime hours worked without overtime pay . . . . A class, on the other hand, . . . may establish liability by proving a uniform policy or practice by the employer that has the effect on the group of making it likely that group members will work overtime hours without overtime pay . . . . [¶] . . . [The plaintiffs'] allegation that [the newspapers] have misclassified putative class members as [independent contractors] rather than employees is only part of the equation. . . . [The plaintiffs] have not alleged that [the newspapers] have a uniform policy that requires putative class members to work overtime." (*Sotelo*, *supra*, 207 Cal.App.4th at p. 654.)

Here, the trial court found Plaintiffs failed to present substantial evidence they could establish through proof common to all potential class members that Tristar generally required all claims examiners to work overtime, and therefore Plaintiffs failed to show "a common fact issue exists, much less predominates." Citing *Sotelo*, the court explained whether Tristar misclassified all claims examiners as exempt formed only part of the liability equation because statutory exemptions from overtime requirements are affirmative defenses on which the employer bears the burden of proof. Before any court or jury may consider whether an employer's classification of a group of employees as exempt subjects the employer to liability on an overtime claim, the employees must show they worked overtime, which then would require the employer to show it either paid overtime compensation or correctly applied an exemption. According to the court, Plaintiffs focused on the classification issue, but failed to present any evidence showing class treatment was appropriate on whether Tristar required claims examiners to work overtime.

14

Contrary to Plaintiffs' contention, the court did not deny the motion because Plaintiffs failed to show the amount of overtime each potential class member worked. Rather, the court denied the motion because Plaintiffs failed to show that whether the potential class members—other than Plaintiffs—worked any overtime at all could be established through common proof. Plaintiffs' contention confuses the fact of damage with the amount of damages. As explained above, the fact of damage is a liability issue that focuses on the existence of harm establishing a plaintiff's entitlement to damages; it is not concerned with the amount of damages. (*Safeway*, *supra*, 238 Cal.App.4th at p. 1154.) At the hearing on Plaintiffs' motion, the court made clear it considered Plaintiffs' failure to show a classwide basis of establishing overtime work by potential class members was a liability issue, not a damages issue.

Substantial evidence supports the trial court's findings, and therefore we cannot say the court abused its discretion in denying Plaintiffs' motion. Plaintiffs presented no evidence to show Tristar had a written or de facto policy requiring claims examiners to work overtime, or that the performance of overtime by claims examiners otherwise was subject to common proof. Plaintiffs presented their own declarations, but no declarations or testimony from any claims examiners. In their final supplemental declarations, Plaintiffs stated they routinely had to work significant overtime to keep up with their assigned caseloads, but Plaintiffs failed to state their experience was typical of other claims examiners or that they observed other claims examiners working overtime to keep up with their caseloads. In contrast, Tristar presented declarations from several claims examiners and supervisors explaining they worked their regular schedules and everyone typically left at the end of their scheduled shift. The court acknowledged Plaintiffs' declarations that they worked overtime to keep up, but the court found those declarations failed to establish overtime work was subject to common proof because Plaintiffs' declarations were merely "anecdotal" and did not show Plaintiffs' experience was typical of other claims examiners. We must accept the court's assessment of the

15

evidence.  (*People ex rel. Harris v. Black Hawk Tobacco, Inc.* (2011) 197 Cal.App.4th 1561, 1567 ["'In determining whether there has been [an abuse of discretion], we cannot reweigh evidence or pass upon witness credibility.  The trial court is the sole arbiter of such conflicts.  Our role is to interpret the facts and to make all reasonable inferences in support of the order issued'"].)

Plaintiffs presented evidence showing the standardized job description Tristar applied to claims examiners and the standardized procedures Tristar used to supervise its claims examiners.  That evidence, however, is relevant to show whether the general supervision element of the administrative employee exemption is subject to common proof, not whether the existence of overtime work is subject to common proof.  Plaintiffs contend the caseload of 150 to 180 cases identified in the claims examiner job description shows they had to work overtime to perform the job, but they presented no evidence to support that contention.  As the trial court found, it cannot infer overtime work was required strictly from the number of cases assigned to claims examiners.  Rather, to make that inference, the court explained it needed testimony from an industry expert opining that a claims examiner could not manage that number of cases without working overtime, or at least testimony from other claims examiners explaining they could not manage their caseloads without working overtime.  As explained above, Plaintiffs provided no declarations from any claims examiners other than their own, and the court found their declarations were merely anecdotal with regard to overtime work.  Essentially, the court concluded that the fact two people invariably worked overtime does not establish a class; we have no basis upon which to quarrel with that conclusion.

Plaintiffs argue the alternative work schedules for many of the claims examiners demonstrated they routinely worked overtime by working more than eight hours in a day.  Plaintiffs point to the claims examiner and supervisor declarations Tristar submitted stating that many claims examiners worked 8.33 or 8.5 hours each day under an alternative work schedule that allowed them to take every other Monday or Friday off.

16

According to Plaintiffs, those alternative work schedules did not exempt Tristar from the statutory overtime requirements because Tristar failed to present evidence showing it followed the required procedures for establishing an exemption based on alternative work schedules. This evidence does not show the existence of overtime work was subject to common proof.

Plaintiffs forfeited this argument by failing to make it in the trial court, and more importantly, their contention lacks merit because it relies on an entirely different liability theory. Plaintiffs' asserted class certification was appropriate because the caseload Tristar assigned all claims examiners generally required them to work overtime to manage their cases and Tristar intentionally misclassified all claims examiners as exempt administrative employees to avoid paying overtime compensation. Plaintiffs below did not base their claims on voluntarily working more than eight hours in a day under invalid alternative work schedules.

To support their contention the existence of overtime work by the potential class members is a damages issue that may not prevent class certification, Plaintiffs cite *Bell*. According to Plaintiffs, "[t]he *Bell* Court held that the purported variances in overtime was [an] improper legal criteri[on] for denial of class certification, even where it was undisputed that some of the class members did not work overtime."[3] Plaintiffs misconstrue *Bell*.

---

[3] Plaintiffs' choice of the word "variances" in this statement demonstrates their misunderstanding of the court's ruling and the governing law. Simple variance in the amount of overtime class members worked, including some class members working no overtime, would be a damages issue that would not justify denying class certification. The court, however, did not simply find a variance in the amount of overtime worked. Rather, the court found Plaintiffs could not establish through evidence common to all class members Tristar had a generally applicable policy or practice that required claims examiners to work overtime. As explained above, such a generally applicable policy is what makes class treatment appropriate in wage and hour cases. (See *Brinker*, *supra*, 53 Cal.4th at p. 1033; *Dailey*, *supra*, 214 Cal.App.4th at p. 98.)

17

In *Bell*, the plaintiffs were claims representatives employed by Farmers Insurance Exchange (Farmers). Like Plaintiffs, the plaintiffs in *Bell* claimed Farmers misclassified them as exempt administrative employees to avoid paying them overtime. After the trial court certified a class of claims representatives, Farmers moved to decertify the class based on discovery that revealed nine percent of a random sample of 295 class members did not claim they worked unpaid overtime. The trial court denied the motion and Farmers appealed. (*Bell*, *supra*, 115 Cal.App.4th at pp. 720-721.)

In affirming the order, the *Bell* court concluded the existence of this marginal number of class members who did not claim injury did not significantly reduce the required community of interest because any individual adjudications these nonclaimants required related solely to damages, and the need for individual adjudications on damages did not prevent class certification. (*Bell*, *supra*, 115 Cal.App.4th at pp. 743-744.) The court further explained, "[I]f proof of individual damages were required by all potentially affected parties as a condition for class certification, it would go far toward barring all class actions." (*Id*. at p. 744.)

*Bell* does not apply here because it did not address the issue on which the trial court relied in denying Plaintiffs' class certification motion. As explained above, the court did not deny Plaintiffs' motion because they failed to show the number of overtime hours each potential class member worked; rather, the court denied the motion because Plaintiffs failed to present any evidence showing the question whether Tristar generally required all claims examiners to work overtime could be shown by common evidence that made class treatment of Plaintiffs' overtime claim appropriate. Unlike here, it was undisputed in *Bell* that the caseload Farmers assigned to its claim representatives generally required them to work overtime. (*Bell*, *supra*, 115 Cal.App.4th at pp. 722-725.) The existence of a small percentage that did not work overtime did not disprove the existence of a generally applicable policy or practice, and therefore did not affect class certification.

18

Moreover, the trial court in *Bell* certified the class and denied the motion for class decertification based on its conclusion class treatment was appropriate. The governing standard of review required the *Bell* court to affirm that ruling unless there was a lack of substantial evidence to support it or a manifest abuse of discretion. (*Bell*, *supra*, 115 Cal.App.4th at pp. 741-742.) Here, the trial court denied class certification, and therefore we must affirm that ruling if supported by substantial evidence. As explained above, substantial evidence supports the court's decision.

Plaintiffs also cite *Williams v. Superior Court* (2013) 221 Cal.App.4th 1353 to support their contention the need to make individual damages determinations does not prevent class certification. Like *Bell*, Plaintiffs' reliance on *Williams* is misplaced because *Williams* did not involve a dispute over whether the existence of a policy requiring overtime work was subject to common proof. Unlike here, the evidence in *Williams* included numerous declarations from class members explaining their workload regularly required them to work more than eight hour a day and 40 hours a week. (*Williams*, at p. 1357.)

Finally, Plaintiffs contend the trial court was required to grant their motion because it found their theory of liability could be decided on a classwide basis. As explained above, in deciding whether common issues predominate, the trial court was required to consider whether plaintiff's theory of liability is likely to prove amenable to class treatment. (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) According to Plaintiffs, "[their] theory of liability is that Plaintiffs and other class members were misclassified as 'exempt' because Tristar cannot prove the 'general supervision' prong of the administrate [employee] exemption." Although the trial court found the general supervision prong of the administrative employee exemption was appropriate for resolution on a classwide basis, that determination did not require the court to grant Plaintiffs' motion.

Plaintiffs' purported theory of liability is not a theory of liability at all. As explained above, exemptions from the statutory overtime requirements are affirmative

19

defenses on which the employer bears the burden of proof. The failure of an affirmative defense may not give rise to liability unless the plaintiff first establishes an underlying basis for liability. Here, the underlying basis for liability is Tristar's alleged failure to pay class members for their overtime work. Only after Plaintiffs make that showing may the court or jury reach the question whether Tristar misclassified the class members as exempt. Plaintiffs' theory of liability therefore is actually a theory that Tristar's defense fails, and the suitability of that defense to class treatment did not require the court to grant Plaintiffs' motion without a showing there also was a liability theory that was suitable to class treatment.

Based on our conclusion the trial court did not err in denying Plaintiffs' motion because Plaintiffs failed to establish that common issues predominated on their overtime claims, we need not address the court's additional finding that class treatment was inappropriate because Plaintiffs failed to show their claims were typical of the proposed class. We simply note much of the foregoing analysis is applicable to the court's typicality finding, and as explained above, typicality examines whether all class members suffered the same or similar injuries, whether the class representatives' claims are based on conduct that is not unique to them, and whether all class members have been injured by the same course of conduct. (*Martinez*, *supra*, 231 Cal.App.4th at p. 375.)

2.      The UCL Claim

Plaintiffs contend the trial court also erred by applying an improper legal criterion in denying their class certification motion on the UCL claim. According to Plaintiffs, their purported failure to present evidence showing the amount of overtime worked by each putative class members was an improper basis for denying their motion because "proof of injury as to the individual class members can never preclude [class] certification of a UCL claim as a matter of settled California law." Plaintiffs again misconstrue the governing law and the trial court's ruling.

20

"'The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice. . . ." [Citation.] Therefore, under the statute "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." [Citation.]' [Citation.] If a defendant is found to have engaged in any of the three varieties of unfair competition, '[t]he court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.' [Citation.] The focus of the UCL is 'on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices.'" (*Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 154 (*Steroid Cases*).)

To advance that purpose, the UCL previously "'authorized any person acting for the general public to sue for relief from unfair competition.'" (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 314 (*Tobacco II*).) Based on the UCL's broad language, "California courts consistently held that liability for restitution under the UCL could be imposed against a defendant without any individualized proof of causation or injury; the plaintiff needed only to show that the defendant engaged in a practice that was unlawful, unfair, or fraudulent and that the defendant may have acquired money or property by means of that practice." (*Steroid Cases*, *supra*, 181 Cal.App.4th at p. 154; see *Tobacco II*, at p. 314 ["'Standing to bring such an action did not depend on a showing of injury or damage'"].)

In 2004, the electorate changed this broad standing rule under the UCL by approving Proposition 64, which "amended the UCL to provide that a private action for relief may be maintained only if the person bringing the action 'has suffered injury in fact and has lost money or property as a result of the unfair competition.'" (*Steroid Cases*, *supra*, 181 Cal.App.4th at p. 154.) Proposition 64 also amended the UCL to "explicitly

21

mandate[] that a representative UCL action [must] comply with Code of Civil Procedure section 382[, the statutory provision governing class actions]." (*Tobacco II*, *supra*, 46 Cal.4th at p. 314.)

"Questions arose as to the effect of the Proposition 64 amendments on UCL class actions, particularly whether each class member must now establish that he or she suffered injury in fact and lost money as a result of the unfair competition. The California Supreme Court answered this question in *Tobacco II*, concluding that the standing provision added by Proposition 64 'was not intended to have any effect at all on unnamed members of UCL class actions.' [Citation.] Therefore, while a named plaintiff in a UCL class action now must show that he or she suffered injury in fact and lost money or property as a result of the unfair competition, once the named plaintiff meets that burden, no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members." (*Steroid Cases*, *supra*, 181 Cal.App.4th at p. 154; see *Tobacco II*, *supra*, 46 Cal.4th at pp. 320-321.)

*Tobacco II*, the *Steroid Cases*, and the other cases Plaintiffs cite address standing requirements to bring an unfair competition claim under the UCL, including a class action claim. (*Tobacco II*, *supra*, 46 Cal.4th at p. 306; *Steroid Cases*, *supra*, 181 Cal.App.4th at pp. 154-155; see *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267; *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128, 1144; *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1105, disapproved on other grounds in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 184-185.) Neither these cases nor Proposition 64, however, changed what a class proponent must show to certify a class on a UCL claim. (*Tobacco II*, at pp. 313, 319.) To bring a class action claim under the UCL, the representative plaintiff must establish he or she has standing under the UCL, as amended by Proposition 64, and that all of the foregoing requirements for a class action are

22

satisfied, including that common issues of fact or law predominate and that the representative's claim is typical of the class. (*Tobacco II*, at p. 319.)

Indeed, subsequent appellate decisions have concluded *Tobacco II* is "irrelevant" to a class certification motion "because the issue of 'standing' simply is not the same thing as the issue of 'commonality.' Standing, generally speaking, is a matter addressed to the trial court's jurisdiction because a plaintiff who lacks standing cannot state a valid cause of action. [Citations.] Commonality, on the other hand, and in the context of the class certification issue, is a matter addressed to the practicalities and utilities of litigating a class action in the trial court. We see no language in *Tobacco II* that suggests to us the Supreme Court intended our state's trial courts to dispatch with an examination of commonality when addressing a motion for class certification. On the contrary, the Supreme Court reiterated the requirements for maintenance of a class action, including (1) an ascertainable class and (2) a '"community of interests"' shared by the class members." (*Cohen v. DIRECTV, Inc.* (2009) 178 Cal.App.4th 966, 981; see *Davis-Miller v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 106, 124; *Steroid Cases*, *supra*, 181 Cal.App.4th at p. 158.)

As explained above, and contrary to Plaintiffs' contention, the trial court did not deny Plaintiffs' class certification motion based on their failure to present individualized proof of injury by each potential class member. Rather, the court denied the motion because Plaintiffs failed to satisfy the commonality requirement by presenting evidence to show they could establish through common proof that Tristar required claims examiners to work overtime. Substantial evidence supports that finding and it is consistent with the governing legal standards.

23

III

DISPOSITION

The order is affirmed.  Tristar shall recover its costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

Filed 7/26/2017

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VALERIE KIZER et al., | G052558 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 30-2014-00707394) |
| TRISTAR RISK MANAGEMENT, | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |
| Defendant and Respondent. | |

It is ordered that the opinion filed in the above-entitled matter on June 26, 2017, is hereby MODIFIED as follows:

1. On page 2, the second sentence of the last paragraph, beginning with "Rather, the court denied," delete the word "that" between the words "failed to show" and "whether the putative class members" so the sentence reads:

Rather, the court denied the motion because Plaintiffs failed to show whether the putative class members worked any overtime at all was subject to common proof.

2. On page 2, the third sentence of the last paragraph, beginning with "To satisfy the commonality requirement," insert the words "they could establish" between the words "required to show" and "their liability theory," and delete the words "could be established" after the words "their liability theory" so the sentence reads:

> To satisfy the commonality requirement for class certification, Plaintiffs were required to show they could establish their liability theory on a classwide basis through common proof.

3. On page 3, the second sentence of the first full paragraph, beginning with "According to Plaintiffs," delete the apostrophe from the word "Plaintiffs'" found between the words "therefore" and "were not required," delete the words "of overtime" between the words "amount" and "each putative class member," and insert the word "overtime" between the words "evidence of the" and "amount" so the sentence reads:

> According to Plaintiffs, the UCL authorizes restitution and other relief without a showing that each class member individually suffered injury, and therefore Plaintiffs were not required to present evidence of the overtime amount each putative class member worked.

4. On page 4, the third sentence of the second paragraph, beginning with "According to Plaintiffs," delete the words "based on the exempt classification it applied to its claims examiners" at the end of the sentence and replace them with the words "because it classified them as exempt under California law" so the sentence reads:

> According to Plaintiffs, Tristar required its claims examiners to work more than eight hours a day and 40 hours per workweek, but paid no overtime because it classified them as exempt under California law.

5. On page 6, the third sentence of the second paragraph, beginning with "Plaintiffs represented," delete the word "represented" at the beginning of the sentence and replace it with the word "asserted" so the sentence reads:

2

Plaintiffs asserted they could defeat the general supervision element by presenting classwide evidence regarding Tristar's generally applicable policies and procedures governing claims examiners and their work.

6. On page 7, the second sentence of the first full paragraph, beginning with "According to the court," delete the word "the" between the words "could not complete" and "workload" and replace it with the word "Tristar's," delete the word "Tristar" following the word "workload," and delete the word "assigned" and replace it with the word "assignments" so the sentence reads:

According to the court, Plaintiffs presented evidence of the written job requirements and Tristar's expectations for claims examiners, but the court could not infer those requirements and expectations required claims examiners to work overtime without evidence from an industry expert or other claims examiners explaining they could not complete Tristar's workload assignments without working overtime.

7. On page 13, the third sentence of the first full paragraph, beginning with "Establishing a uniform policy," delete the words "Establishing a" at the beginning of the sentence and replace them with the words "Evidence of an employer's," and delete the words "that an employer consistently applied" following the words "uniform policy" so the sentence reads:

Evidence of an employer's uniform policy to misclassify a group of employees as exempt from overtime requirements is not sufficient to support class certification because misclassification alone does not establish liability for overtime violations.

8. On page 15, the second sentence of the first paragraph, beginning with "Rather, the court denied," delete the words "that whether" between the words "failed to show" and "the potential class members" and replace them with the words

3

"they could establish through common proof that," and delete the words "at all could be established through common proof" at the end of the sentence so the sentence reads:

Rather, the court denied the motion because Plaintiffs failed to show they could establish through common proof that the potential class members—other than Plaintiffs—worked any overtime.

9. On page 15, third sentence of the second paragraph, beginning with "Plaintiffs presented their own declarations," insert the word "other" between the words "testimony from any" and "claims examiners" so the sentence reads:

Plaintiffs presented their own declarations, but no declarations or testimony from any other claims examiners.

10. On page 15, last sentence of the second paragraph, beginning with "We must accept," delete the words "must accept" at the beginning of the sentence and replace them with the words "are in no position to second guess" so the sentence reads:

We are in no position to second guess the court's assessment of the evidence.

11. On page 16, the sixth sentence of the first full paragraph, beginning with "As explained above," delete the words "with regard to overtime work" at the end of the sentence so the sentence reads:

As explained above, Plaintiffs provided no declarations from any claims examiners other than their own, and the court found their declarations were merely anecdotal.

12. On page 18, the second sentence of the third paragraph, beginning with "As explained above," delete the words "denied the motion" between the words "rather, the court" and "because Plaintiffs failed" and replace them with the words "concluded class treatment was not appropriate," delete the words "present any evidence showing the question whether" following the words "Plaintiffs failed to" and replace them with the words "show they could prove through common evidence that," and delete

4

the words "could be shown by common evidence that made class treatment of Plaintiffs' overtime claim appropriate" at the end of the sentence so the sentence reads:

> As explained above, the court did not deny Plaintiffs' motion because they failed to show the number of overtime hours each potential class member worked; rather, the court concluded class treatment was not appropriate because Plaintiffs failed to show they could prove through common evidence that Tristar generally required all claims examiners to work overtime.

13. On page 19, the last sentence of the second paragraph, beginning with "Unlike here," delete the word "hour" between the words "more than eight" and "a day" and replace it with the word "hours" so the sentence reads:

> Unlike here, the evidence in *Williams* included numerous declarations from class members explaining their workload regularly required them to work more than eight hours a day and 40 hours a week.

14. On page 19, the second sentence of the third paragraph, beginning with "As explained above," delete the words "was required to" between the words "the trial court" and "consider whether" and replace them with the word "must" so the sentence reads:

> As explained above, in deciding whether common issues predominate, the trial court must consider whether plaintiff's theory of liability is likely to prove amenable to class treatment.

15. On page 20, the first full sentence at the top of the page, beginning with "The failure of an affirmative defense," delete the entire sentence and replace it with the following sentence:

> A plaintiff must first establish an underlying basis for liability before affirmative defenses are considered.

5

16. On page 20, the third full sentence at the top of the page, beginning with "Only after plaintiffs make," delete the words "court or jury" between the words "showing may the" and "reach the question" and replace them with the words "fact finder" so the sentence reads:

> Only after Plaintiffs make that showing may the fact finder reach the question whether Tristar misclassified the class members as exempt.

These modifications do not change the judgment.

The Employers Group and the California Employment Law Council have requested that we certify our opinion for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


_____
THOMPSON, J.

6