Filed 9/19/23; Certified for Publication 10/19/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CECILIA ARCE,<br><br> Plaintiff and Appellant,<br><br> v.<br><br>THE ENSIGN GROUP, INC. et al.,<br><br> Defendants and Respondents. | B317161<br><br>(Los Angeles County Super. Ct. No. 19STCV41501) |

  APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge. Reversed and remanded with directions.

  Mahoney Law Group, Kevin Mahoney and George Singer for Plaintiff and Appellant.

  Call & Jensen, Julie R. Trotter, Melinda Evans, Morgan E. Podruski and Ellen Connelly Cohen for Defendants and Respondents.

_____

# *INTRODUCTION*

Plaintiff and appellant Cecilia Arce claims the nursing facility where she worked as an aide for nine years was so chronically understaffed—and she was so persistently overworked—that she never took a rest break and frequently had to work through her meal breaks. After her termination, Arce brought a claim under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) against defendants and respondents Southland Management LLC (Southland) and The Ensign Group Inc. (Ensign Group).[1]

Respondents moved for summary judgment, arguing that Arce lacked standing to bring a representative PAGA action because she did not suffer a Labor Code violation within the limitations period. But the trial court granted summary judgment on a different, and perhaps broader, issue, holding that Arce had not offered any "competent proof that one or more cognizable Labor Code violation[s] occurred during her employment in connection with her right to meal and rest periods." The court entered a judgment of dismissal, and Arce appeals.

On appeal, Arce contends respondents did not meet their initial burden of establishing her lack of standing, and as such, the court erred by granting summary judgment. We agree. We, therefore, reverse and remand with directions.

---

[1] All undesignated statutory references are to the Labor Code.

2

## BACKGROUND

### 1. *Arce's Work as a Certified Nursing Assistant*

Southland operates Southland Care Center, a skilled nursing facility in Los Angeles. In 2009, Southland hired Arce to work as a certified nursing assistant (CNA).[2] As a CNA, Arce provided her assigned patients with routine daily nursing care and services, such as assisting them with bathing and brushing their teeth, keeping them comfortable, and attending to their basic hygiene needs.

Arce primarily worked the overnight shift, from 11:00 p.m. to 7:00 a.m. It appears Southland Care Center had three floors of patients, with 40 patients on each floor. Six CNAs and three licensed vocational nurses (LVNs) were assigned to the overnight shift—two CNAs and one LVN per floor.

Even with a typical load of 20 patients per CNA, Arce did not have sufficient time to accomplish her assigned tasks. But if one of the CNAs called in sick, the LVN would divide the absent CNA's patients among the remaining CNAs on other floors, increasing each person's workload. The system increased stress on patients, who were left unattended when CNAs had to respond

---

[2] There is a dispute about whether Arce was employed by Southland only, by Ensign Group, a holding company that owns the portfolio company that owns Southland, or by both Southland and Ensign Group. Arce sued both companies, and both are respondents in this appeal. As the trial court did not grant summary judgment based even in part on the identity of Arce's employer, and the issue is immaterial to this appeal, we express no opinion on that subject. We use *employer* when discussing factual matters and *respondents* when discussing procedural matters.

to different floors. And, with only one CNA available rather than the usual two, taking a break also meant leaving the patients unattended.

Likewise, if an LVN needed help, she would call Arce or another CNA to assist her, regardless of whether that person was taking a break. When the LVN asked for assistance at these times, Arce initially tried telling her she was off the clock. But the LVN's response "was that there was an emergency, if—that there was a patient, either a patient was forward, or she needed help, so [Arce] went to help her. [Arce] thought it was [her] duty to do it." Although no one ever told Arce she was expected to interrupt her meal periods to help the LVN in these circumstances, Arce believed the LVN "was above" her, so she "understood, to [her] knowledge, that [she] was supposed to do what [the LVN] asked" of her.[3]

Arce worked her last shift on November 8, 2018. She received payment for her accrued vacation time on November 19, 2018, and received her final wage statement on November 21, 2018, which was payment for the hours she had worked during her last pay period. These dates are relevant to our analysis. Neither wage statement contained premium wages for missed meal and rest breaks.

On November 23, 2018, Arce's employment was terminated.

---

[3]     The court sustained respondents' objections to most of Arce's testimony that she understood the LVN to be her supervisor and believed she needed to follow the LVN's directions. We express no opinion on the court's evidentiary rulings because the excluded evidence is immaterial to our resolution of this appeal. In any event, respondents did not object to any testimony on which we rely.

4

## 2. *PAGA Notice*

On November 15, 2019, Arce submitted a prefiling PAGA notice to the California Labor and Workforce Development Agency (LWDA). As relevant here, the notice stated:

"Ms. Arce will further allege in her complaint that she and her coworkers were regularly interrupted during and/or forced to forego lawful and timely meal and rest periods due to inadequate staffing and other issues. Employer routinely required Ms. Arce and aggrieved employees to work through meal and/or rest periods and/or interrupted Ms. Arce, preventing her from taking off-duty meal periods or on duty rest periods. Employer failed to provide compliant meal and rest periods and/or payments for said missed meal/rest periods."

## 3. *Current Lawsuit*

Arce filed a class action complaint on November 19, 2019. In the complaint, she stated that she had given written notice of her PAGA claims to the LWDA and intended to amend her complaint upon either receiving notice of the LWDA's intent not to investigate or the expiration of the LWDA's time to provide notice. She also stated that her amended complaint would assert a representative action under PAGA seeking penalties for the State of California.

Arce filed the operative first amended complaint on March 6, 2020. The complaint did not allege any individual or class claims. Instead, Arce asserted six causes of action for PAGA violations: failure to pay all wages (first cause of action), failure to provide meal periods (second cause of action), failure to provide rest periods (third cause of action), failure to timely pay wages due upon separation of employment (fourth cause of

5

action), failure to maintain accurate payroll records (fifth cause of action), and unlawful deduction of wages (sixth cause of action).

Respondents moved for summary judgment. They argued that Arce did not suffer any Labor Code violations during the limitations period, and thus lacked standing to pursue PAGA claims. They also sought, in the alternative, summary adjudication of four issues: (1) Arce did not satisfy PAGA's prefiling notice requirement with respect to her assertion that she was not compensated for all her working time; (2) Arce did not satisfy PAGA's prefiling notice requirement because she did not include facts or theories as to how Ensign Group could be considered her joint employer; (3) Ensign Group was not Arce's employer; and (4) the sixth cause of action did not raise a triable issue of material fact because the challenged deduction was lawful.

The court granted summary judgment in respondents' favor. The court rejected respondents' arguments that Arce's prefiling notice was insufficient. It held, however, that in opposing the motion, Arce had not presented sufficient competent evidence that she had suffered a Labor Code violation at any point during her employment, and, therefore, had not established a triable issue of material fact that she had standing to pursue a PAGA claim. The court also concluded that Arce had not raised a triable issue of material fact as to the sixth cause of action, which concerned the legality of a payroll offset to account for a class-action settlement. The court did not decide the issue of which party was Arce's actual employer.

The court entered a judgment of dismissal, and Arce timely appealed.

## DISCUSSION

Arce contends the trial court erroneously granted summary judgment because respondents did not present evidence sufficient to negate the standing element of her PAGA claims. We agree.

### 1. *Standard of Review*

The standard of review of an order granting summary judgment is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850; see also Code Civ. Proc., § 437c, subd. (c).) The pleadings determine the issues to be addressed by a summary judgment motion. (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler*, at p. 768.) In performing this independent review, "we follow the traditional three-step analysis. 'We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor.

7

Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)

2.    *Applicable Labor Code Principles*

"California's Labor Code contains a number of provisions designed to protect the health, safety, and compensation of workers." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 80 (*Kim*).) As relevant here, every employee is entitled to a 10-minute paid rest break per four hours of work and a 30-minute unpaid meal break per five hours of work. (§§ 226.7, 512.1.) During those periods, the employer must relieve the employee of all work, relinquish control over her activities, and permit her a reasonable opportunity to take an uninterrupted break. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040 (*Brinker*).) "[A]n employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." (*Ibid.*) "[I]f the employer knows that meal breaks are missed, shortened, or unduly delayed because the employer has instructed the employee to work, or has otherwise impeded the taking of breaks, that duty is contravened, absent a suitable waiver or agreement by the employee." (*Safeway, Inc. v. Superior Court* (2015) 238 Cal.App.4th 1138, 1155.) If the employer fails to provide a required meal period or rest break, it must compensate the employee with a "premium"—an additional hour

of pay for each workday during which a violation occurred. (§§ 226.7, subd. (c), 512.1, subd. (c); *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 104–105 (*Naranjo*).)

When an employment relationship ends, employers must promptly pay all unpaid wages to the departing employee. (*Naranjo*, *supra*, 13 Cal.5th at p. 105.)  Employers who willfully delay end-of-employment wages are subject to "waiting time penalties."  (§ 203; *Kim*, *supra*, 9 Cal.5th at p. 82.)  "[J]ust like other forms of wages, any unpaid premium pay must be paid promptly once an employee leaves the job.  And when an employer willfully fails to comply with this obligation," waiting time penalties are available.  (*Naranjo*, at p. 110.)

"Employers who violate these statutes may be sued by employees for damages or *statutory* penalties.  [Citations.] Statutory penalties, including double or treble damages, provide recovery to the plaintiff beyond actual losses incurred.  [Citation.] Several Labor Code statutes provide for additional *civil* penalties, generally paid to the state . . . .  [Citation.]  Before PAGA's enactment, only the state could sue for civil penalties."  (*Kim*, *supra*, 9 Cal.5th at p. 80.)  But "[g]overnment enforcement proved problematic. . . .  The Labor Commissioner and other agencies were . . . hampered in their enforcement of civil penalties by inadequate funding and staffing constraints.  [Citation.]  To facilitate broader enforcement, the Legislature enacted PAGA, authorizing 'aggrieved employees' to pursue civil penalties on the state's behalf."  (*Id*. at p. 81.)

Any "aggrieved employee" has standing to bring a PAGA action.  (§ 2699, subd. (a).)  An aggrieved employee is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  (§ 2699,

9

subd. (c); *Kim, supra,* 9 Cal.5th at p. 82.)  Thus, a plaintiff has standing to bring a PAGA action if (1) she was employed by the alleged violator, and (2) she suffered at least one Labor Code violation on which the PAGA claim is based.  (*Kim*, at pp. 83–84.)

"A PAGA action is subject to a one-year statute of limitations."  (*Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42, 59.)  But because a would-be PAGA plaintiff can only bring her claim to court 65 days after submitting a prefiling notice to the LWDA, the statute of limitations is tolled for 65 days from the time the notice is submitted.  (§ 2669.3, subds. (a)(2)(A), (d).)

## 3. *Issues Framed by the Complaint*

As we have observed, we first consider the allegations of the complaint to determine the scope of the issues.  (*Serri v. Santa Clara University* (2020) 226 Cal.App.4th 830, 858 (*Serri*).)  Here, Arce alleged she had standing to bring her PAGA action as an aggrieved employee who was subject to at least one of the Labor Code violations identified in her notice to the LWDA.

As to meal periods, Arce's complaint alleged respondents "had a pattern, practice, and policy of not providing proper meal periods due to their scheduling and understaffing issues, high patient to nurse ratio, and heavy workload."  Arce was instructed to clock out for meal periods and continue working or was interrupted when patients required assistance.  Respondents also failed to pay an additional hour of wages for each workday in which a meal-period violation occurred.

Arce's complaint made similar allegations about rest breaks.  She alleged her "breaks [were] interrupted whenever . . . patients needed assistance," and she was required to work through rest breaks.  Respondents' "high patient to nurse ratio, understaffing, and heavy workload . . . systematically denied

10

[Arce] . . . from taking proper rest breaks." Respondents also failed to provide an additional hour of wages for each workday in which a rest-break violation occurred.

The complaint alleged that respondents' failure to pay meal and rest premiums at the time of the violations meant those premiums were due upon separation of employment. But, according to the complaint, respondents did not timely pay those wages or accurately calculate them.

These allegations sufficiently state causes of action for Labor Code violations under PAGA.

**4.** ***Respondents Sought Summary Judgment on Statute of Limitations Grounds***

As the moving parties, respondents had the initial burden to show Arce's claims had no merit—that is, that one or more elements of each cause of action could not be established, or that there was a complete defense to each cause of action. (Code Civ. Proc., § 437c, subd. (o); see *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.) "If a defendant's moving papers make a prima facie showing that justifies a judgment in its favor, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact." (*Jones*, at p. 945; *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 965.) In assessing whether respondents have made the required showing, we view the evidence in the light most favorable to Arce and resolve all evidentiary doubts or conflicts in her favor. (*Serri*, *supra*, 226 Cal.App.4th at p. 859.)

In their motion for summary judgment, respondents correctly noted that a plaintiff asserting a representative claim under PAGA must be aggrieved. Thus, Arce must be "someone

11

'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.' " (*Kim*, *supra*, 9 Cal.5th at pp. 83–84.) It is undisputed that Arce worked for Southland Care Center. Respondents argued, however, that Arce was not an aggrieved employee because any Labor Code violations occurred outside the limitations period, with the statute of limitations measured by one year from the last violation.[4] Specifically, they argued Arce's claims were time-barred because her last day of work was November 8, 2018, and, therefore, she could not have missed a meal or rest break after November 15, 2018—one year before she submitted her pre-filing notice to the LWDA.

This was not sufficient to negate standing.

Arce's last shift was on November 8, 2018, and her last wage statement was issued on November 21, 2018. She submitted a prefiling notice of her PAGA claim to the LWDA on November 15, 2019. As discussed, Arce, like other employees in California, was entitled to entitled to a 10-minute rest break per four hours of work and a 30-minute meal break per five hours of work. (§§ 226.7, 512.1.) For any day Arce's employer failed to provide a break, it was required to compensate her with a one-hour pay premium. (*Naranjo*, *supra*, 13 Cal.5th at pp. 104–105.) All unpaid premiums were "wages" due upon termination. (*Id*. at p. 110.) Thus, any overdue premiums were required to have

---

[4] The motion stated: "This Motion is made on the grounds that there is no triable issue of material fact as to any claim asserted by [Arce] because . . . . [Arce] lacks standing to pursue PAGA claims given she did not suffer any violations alleged during the applicable limitations period for those claims."

12

been paid in the November 21, 2018 wage statement—and every outstanding premium Arce's employer failed to pay as part of this wage statement constituted its own Labor Code violation, each of which fell within the limitations period.  It is undisputed that the final wage statement did not contain any premium payments.

Thus, it was not enough to for respondents to show that Arce had not been denied a meal or rest break during the year before she submitted her PAGA notice.  They *also* needed to establish that Arce had been paid all outstanding meal and rest premiums—either before or after her termination.  That is, respondents needed to provide evidence that either (1) Arce had *never* suffered a Labor Code violation, and thus, no premiums were due upon her termination, or (2) they paid all premiums at the time of the violations, so no additional monies were due Arce upon her termination.  Arce would lack standing in the former case because she had not suffered a Labor Code violation; in the latter, because the violations were outside the limitations period.

Respondents emphasized that Arce knew her employer's policies required her to take meal and rest breaks, and she was never explicitly told not to follow those policies.  Certainly, "[p]roof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay," but "an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." (*Brinker*, *supra*, 53 Cal.4th at p. 1040.)  Here, Arce alleged her employer's understaffing and workload policies made it effectively impossible for her to take the required breaks.  Respondents' moving papers did not present any evidence to negate this claim.

13

To the contrary, respondents' very own evidence supported it. According to deposition excerpts that respondents attached to their moving papers, Arce told her supervisors she was overwhelmed by the number of patients who needed help from limited staff; the workload prevented her from taking breaks.[5] The supervisor responded that Southland would get more personnel to fix the problem, but they never did. Thus, Arce went back to the supervisor to tell him that she did not have enough time to attend to all the patients in her care. Again, Arce was told they would get more staff. When none materialized, she went to her supervisors a third time to repeat that she did not have sufficient time to care for patients on other floors when that floor's staff called in sick. Arce explained that she could not take her lunch break because it would mean leaving her assigned patients alone. The supervisor "looked concerned and said that that wouldn't happen, but it kept on happening." Arce spoke to one supervisor four times and spoke to another supervisor three times. Neither supervisor remedied the staffing shortages, and no one ever told Arce how to take breaks in a way that would be consistent with her duty to her patients. Respondents have presented no evidence that these issues were immaterial or that they were addressed.[6]

_____

[5] Although no supervisors were available to speak with Arce during her shifts, she was able to speak to administrators after her workday.

[6] For example, although respondents emphasize that Arce was expected to follow meal- and rest-break policies, it also produced a 160-item list of CNA job duties, which included "[c]ooperate with . . . facility personnel to ensure that nursing services can be adequately maintained to meet the needs of the

14

Likewise, respondents insisted that Arce knew she could make corrections to her recorded time, and that such a request had never been rejected. But company records respondents submitted as exhibits state that Arce was not required to track her rest periods, only her meal breaks. And, in any event, respondents do not present any evidence that, after adjusting her time, Arce was paid the required premiums.

On this record, we conclude that respondents did not produce sufficient evidence to meet their initial burden of production on the standing issue, i.e., that Arce had not suffered a Labor Code violation during her employment. Arce's complaint alleged that "scheduling and understaffing issues, high patient to nurse ratio, and [a] heavy workload" made it functionally impossible for her to take meal and rest breaks. Respondents' moving papers did not address or negate those allegations. They did not, for example, submit data about night-shift staffing levels or information about how their patient-to-nurse ratio compared to the industry standard. Because respondents did not furnish evidence tending to negate Arce's allegations that their practices conflicted with their written break policies, they did not meet their initial burden of production, and summary judgment should have been denied.[7]

residents," "[w]ork[ ] beyond normal working hours," and "[m]eet with your shift's nursing personnel, on a regularly scheduled basis, to assist in identifying and correcting problem areas, and/or the improvement of services." Respondents did not produce evidence that anyone had explained to Arce how to satisfy these competing imperatives.

[7] At oral argument, respondents' counsel relied heavily on *David v. Queen of Valley Medical Center* (2020) 51 Cal.App.5th

### DISPOSITION

The judgment is reversed, and the matter is remanded with directions to the trial court to vacate its order granting summary judgment and enter a new order denying summary judgment. Appellant Cecilia Arce shall recover her costs on appeal.

RUBIN, P. J.

WE CONCUR:

MOOR, J.                                    KIM, J.

---

653, a case that was neither cited in respondents' brief nor provided to Arce and the court before argument. (See *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356 ["An appellate court is not required to consider any point made for the first time at oral argument, and it will be deemed waived"].) Regardless, *David* is unpersuasive. In that case, the plaintiff argued her meal breaks had been interrupted because charge nurses asked her questions during the breaks and pointedly looked at the clock. (*David*, at pp. 659, 662.) Here, by contrast, Arce testified that she could not take her breaks because she was directed to assist with patients, and the facility's staffing practices made it effectively impossible to take breaks without compromising patient care or endangering patient health. Also significant is that, when the plaintiff in *David* did suffer an interrupted break, she was compensated with appropriate premium pay. (*Id.* at p. 662.) In the present case, even when Arce requested time adjustments for missed meal periods and the employer adjusted her regular pay, Arce did not receive premium pay. Finally, unlike respondents here, the hospital in *David* presented "extensive evidence that plaintiff's supervisors did not urge her to work during meal or rest periods and that she did not report missing a meal or rest break to her supervisors." (*Id.* at p. 659.)

16

Filed 10/19/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CECILIA ARCE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ENSIGN GROUP, INC.,<br><br>    Defendant and Respondent. | B317161<br><br>(Los Angeles County Super.<br>Ct. No. 19STCV41501) |

THE COURT:

        IT IS HEREBY ORDERED that the opinion filed in the above matter on September 19, 2023, is certified for publication with no change in judgment.

_____

RUBIN, P. J.                    MOOR, J.                    KIM, J.